Filed 9/4/25  P. v. OptumRx CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OPTUMRx INC.,<br><br>    Defendant and Appellant. | B343828<br><br>(Los Angeles County Super. Ct. No. 23STCV20886) |

APPEAL from an order of the Superior Court of Los Angeles County, David S. Cunningham, Judge.  Affirmed.

Alston & Bird, Brian D. Boone, Matthew P. Hooker, Alexander Akerman, Omar A. Morquecho and Andrew Hatchett for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Scott Kuhn and Andrea Ross, Deputy County Counsel; Motley Rice, Frederick C. Baker, Brendan Austin, Linda Singer and Elizabeth Smith for Plaintiff and Respondent.

Defendant and appellant OptumRx, Inc., appeals from an order denying a motion to disqualify the law firm Motley Rice LLC, from representing plaintiff and respondent, the People of the State of California, in this action for public nuisance arising out of the opioid epidemic. On appeal, OptumRx contends Motley Rice should be disqualified pursuant to California Rules of Professional Conduct, rule 1.11(c),[1] because the law firm, while representing government entities in prior matters, obtained "confidential government information" that was not "otherwise available to the public." We agree with the many courts that have considered this issue already: information that may be obtained through routine discovery in civil litigation, even if subject to a protective order, is "available to the public" and not confidential government information under rule 1.11(c). Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Federal Litigation and Government Investigations

OptumRx is a pharmacy benefit manager that administers prescription drug benefits for health plan sponsors. In December 2017, several lawsuits with common factual questions concerning prescription opioids were consolidated in federal multidistrict litigation (the MDL). (*In re Nat'l Prescription Opiate Litigation* (2017) 290 F.Supp.3d 1375, 1378.) In January 2018, the MDL court appointed an attorney from Motley Rice as co-lead counsel

---

[1] All undesignated references to rules are to the California Rules of Professional Conduct.

2

for the Plaintiffs' Executive Committee.  (*In re Nat'l Prescription Opiate Litig.* (N.D. Ohio, Mar. 18, 2024, Case No. 1:17-md-2804) 2024 WL 3387288, at p.113)  A few weeks later, OptumRx became a defendant in the MDL.  (*Ibid.*)

In September 2018, the City of Chicago retained Motley Rice to investigate and litigate potential claims for unfair or deceptive business practices by pharmacy benefit managers (the Chicago matter).  In connection with this investigation, the City of Chicago issued a subpoena to OptumRx to produce documents, including documents about payments that exceed the cash price. It is undisputed that the documents OptumRx produced included thousands of pages of information about OptumRx's business practices, formulary development, clinical analysis, rebate negotiations, and financial data.  A confidentiality agreement allowed the materials to be used outside of the Chicago matter only as required by law or court order.

In December 2020, the Office of the Attorney General for the District of Columbia retained Motley Rice to investigate potential violations of consumer protection and false claim laws in the District of Columbia (the DC matter).  The Office of the Attorney General for the District of Columbia issued a subpoena directing OptumRx to produce to its counsel, Motley Rice, documents and information related to OptumRx's pricing practices.  OptumRx produced information about rebates for prescriptions filled in the District of Columbia, as well as a set of documents that it had produced previously to the Minnesota Attorney General (the Minnesota documents), subject to a confidentiality agreement.  OptumRx considered the majority of the Minnesota documents to be highly confidential and commercially sensitive.

In April 2021, Motley Rice was retained to represent the Department of the Attorney General of the State of Hawaii in an investigation of prescription drug billing practices by pharmacy benefit managers (the Hawaii matter). The Attorney General for the State of Hawaii issued a subpoena directing OptumRx to deliver documents to Motley Rice related to pricing and rebates for prescription drugs. OptumRx produced to Motley Rice a spreadsheet with information about certain pricing practices, as well as the Minnesota documents, subject to a confidentiality agreement that allowed use of the materials outside the State of Hawaii's investigation only as required by law or court order.

## B. California Complaint and Disqualification Motion in MDL

In August 2023, in the instant case, Motley Rice and the Office of the County Counsel for the County of Los Angeles, on behalf of the People, filed a complaint for public nuisance against OptumRx and other pharmacy benefit managers.

Meanwhile, in the MDL proceeding, OptumRx filed a motion seeking to disqualify Motley Rice under Ohio Rule of Professional Conduct 1.11(c) (Ohio Rule 1.11), which the MDL court denied in March 2024. (*In re Nat'l Prescription Opiate Litig.*, *supra*, 2024 WL 3387288, at p. 126.) OptumRx filed a petition for a writ of mandamus in federal court to obtain review of the order denying disqualification of Motley Rice in the MDL.

The MDL court created a discovery repository and required defendants to produce all non-privileged documents previously produced in civil investigations, litigations, and administrative actions that were relevant to claims in the MDL proceeding. On

4

March 26, 2024, OptumRx complied with the MDL discovery repository order by producing documents for the depository, including the Minnesota documents. All plaintiffs' counsel who sign a protective order in the MDL have access to the documents that OptumRx's disqualification motion is based upon. Counsel for the People in the instant proceeding have signed the protective order in the MDL.

In May 2024, Motley Rice and County Counsel, on behalf of the People, filed the operative second amended complaint in the instant case, alleging statutory and common law claims for public nuisance against OptumRx and other pharmacy benefit managers.

## C.   Disqualification Motion in the Instant Case

On June 24, 2024, OptumRx filed a motion to disqualify Motley Rice based on rule 1.11(c), arguing that the firm was prohibited from pursuing the People's claims where it could use the information that Motley Rice had obtained through subpoenas served in prior government investigations. OptumRx had produced thousands of documents directly to Motley Rice in response to the government subpoenas. OptumRx argued that the information produced in other cases was not publicly available, and rule 1.11(c) prohibited Motley Rice's participation in the instant case where it could use its knowledge of that information against OptumRx in the instant case. Specifically with respect to application of rule 1.11(c), OptumRx argued that information should not be considered "available to the public" simply because it could be obtained through civil discovery.

5

OptumRx submitted the declaration of its attorney Allison Caplis, who had responded to investigative subpoenas served on OptumRx by the Attorneys General of Hawaii and the District of Columbia. Caplis declared that the information produced had consisted of sensitive commercial documents that were not available to the public. OptumRx does not routinely produce these types of documents and would not produce the materials without securing a protective order or entering into a confidentiality agreement. OptumRx submitted a similar declaration by its attorney Michelle S. Grant as to documents produced in response to the investigative subpoena of the City of Chicago. OptumRx also submitted the declaration of its attorney Matthew Hooker explaining that only 41 of the documents produced to the Minnesota Attorney General were available as a regular part of OptumRx's business; the vast majority of the documents were highly confidential, commercially sensitive documents that were not available to the public. OptumRx also submitted a report from two legal experts on the application of rule 1.11(c) in the instant matter.

On August 5, 2024, the People filed an opposition to the motion to disqualify Motley Rice. The People argued that the documents at issue did not qualify as confidential government information under rule 1.11(c) because the information was available to the public through routine discovery. The People also argued that Motley Rice's access to the information could not cause material disadvantage to OptumRx, and that Motley Rice was not a public official or employee in the government investigation.

The People submitted several declarations in support of the opposition, including the declaration of attorney Elizabeth Smith,

who explained that the information discussed by OptumRx's experts was in publicly available documents. The People also submitted the expert opinion of Lynn Baker, a law professor at the University of Texas School of Law, opining that rule 1.11(c) does not require disqualification of Motley Rice.

On August 26, 2024, OptumRx filed a reply. OptumRx argued, among other issues, that whether information constitutes "confidential government information" under rule 1.11(c) cannot depend on whether the information is available through routine discovery, or nothing would qualify as confidential government information and rule 1.11(c) would be written out of existence. For the first time, OptumRx also argued that Rule 1.11(c) was not limited to documents, but encompassed other confidential information about OptumRx. For example, it included strategic insights and mental roadmaps that could be developed from an investigation, such as the strengths and weaknesses of the evidence compiled against a party. It also included internal documents and discussions about the investigation and litigation strategies, or materials that third parties produced in response to subpoenas, which Motley Rice had access to during its government service in other cases and was not available through the MDL repository. If OptumRx subpoenaed Motley Rice to produce other types of information, OptumRx expected the firm would assert privileges that demonstrate Motley Rice has confidential government information beyond the documents that OptumRx produced.

In a footnote, OptumRx requested permission to depose the People's declarants about their access to confidential government information about OptumRx other than the documents that OptumRx produced.

On October 22, 2024, OptumRx's petition for a writ of mandate seeking to disqualify Motley Rice in the MDL court under Ohio Rule 1.11(c) was denied. Other federal courts have similarly denied motions by OptumRx seeking to disqualify Motley Rice. (*City of Boston v. Express Scripts, Inc.* (D. Mass. Feb. 11, 2025) 765 F.Supp.3d 31 [no disqualification under Massachusetts Rule of Professional Conduct 1.11(c)]; *Anne Arundel Cnty. v. Express Scripts, Inc.* (D. Md., Jan. 21, 2025, Civ No. MJM-24-90) 2025 WL 254807 [no disqualification under Maryland Attorneys' Rule of Professional Conduct 1.11(c)].)

On November 14, 2024, a hearing was held in the instant case on OptumRx's motion to disqualify Motley Rice. The trial court denied the motion. The court found OptumRx had not shown Motley Rice acquired confidential government information about OptumRx within the meaning of rule 1.11(c).

The court found OptumRx's experts unpersuasive and noted documents marked confidential by a party are sometimes discoverable. OptumRx failed to differentiate between documents the company would produce in routine discovery, perhaps under a protective order, and any truly undiscoverable confidential information. The court also found OptumRx's responses to the government subpoenas were analogous to responses to civil litigation demands, which are subject to compulsory discovery. In addition, the documents had already been produced in the MDL litigation under an order allowing all MDL plaintiffs to use the documents, which established that the documents can be obtained through routine discovery.

With respect to information other than documents, the trial court noted that OptumRx had not identified any particular strategic insight or mental roadmap that was subject to rule

8

1.11(c). The court viewed OptumRx's request to depose the People's declarants about whether they had any non-documentary confidential government information as an admission that the argument was speculative, vague, and amorphous. Even assuming strategic insights and a mental roadmap existed, they would likely have been derived from the documents themselves, so depositions were not likely to reveal different confidential government information sufficient to change the outcome of the motion to disqualify. The court denied OptumRx's request to depose the People's declarants.

The trial court also found OptumRx failed to show the information at issue could be used to the disadvantage of OptumRx, because the information was available to all MDL plaintiffs, including County Counsel for the People.

OptumRx filed a timely notice of appeal from the order denying disqualification, which is appealable under Code of Civil Procedure section 904.1, subdivision (a)(6). (*Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 452–453.)

## DISCUSSION

## A.     Standard of Review

" 'A trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." ' (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145.) '[U]ltimately the

9

issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility.' " (*Johnson v. Department of Transportation* (2025) 109 Cal.App.5th 917, 933.)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra*, 20 Cal.4th at pp. 1143–1144.)

## B. Disqualification

OptumRx contends the trial court abused its discretion by denying the motion for disqualification of Motley Rice because the information at issue constituted confidential government information under Rule 1.11(c). We disagree.

### 1. General Principles and Framework

The California Rules of Professional Conduct do not provide standards for disqualification in the courts, but courts analyzing

10

disqualification issues may obtain guidance from the rules. (*Antelope Valley Groundwater Cases* (2018) 30 Cal.App.5th 602, 621.)

Rule 1.11 was enacted as part of comprehensive amendments to California's Rules of Professional Conduct, effective November 2018. (Rule 1.11; *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 86, fn. 7.)

Paragraph (a)(1) of rule 1.11 requires a lawyer who formerly served as a public official or government employee to abide by the same duties under rule 1.9(c) as a lawyer who formerly represented a private client. As a result, rule 1.11(a)(1) "protects information obtained while working for the government to the same extent as information learned while representing a private client." (Rule 1.11, com. 4, eff. Nov. 1, 2018.)

In the absence of a prior attorney-client relationship, however, an attorney representing a private client does not owe a broad duty to an opposing party to maintain that party's confidences. (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 588.) "The imposition of such a duty would be antithetical to our adversary system and would interfere with the attorney's relationship with his or her own clients. The courts have recognized repeatedly that attorneys owe no duty of care to adversaries in litigation or to those with whom their clients deal at arm's length. (See *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 344; *Wasmann v. Seidenberg* (1988) 202 Cal.App.3d 752, 755; *Schick v. Lerner* (1987) 193 Cal.App.3d 1321, 1330–1331; *St. Paul Title Co. v. Meier* (1986) 181 Cal.App.3d 948, 951; *Morales v. Field, DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307,

11

318.)" (*In re Complex Asbestos Litigation*, *supra*, 232 Cal.App.3d at p. 588.)

OptumRx does not contend that Motley Rice used the information obtained in prior investigations in violation of the protective orders in those matters. In fact, courts have found attorneys who obtain confidential information from an opposing party subject to a protective order are not disqualified from representing different clients in subsequent litigation against the same party. (See, e.g., *Hu–Friedy Mfg. Co., v. GE* (N.D. Ill. July 19, 1999, No. 99 C 0762) 1999 WL 528545, at pp. 7–8 [interpreting protective order to bar future use of confidential information in subsequent action even though independently relevant and discoverable would restrict attorney's right to practice law]; *Tradewinds Airlines, Inc. v. Soros* (S.D.N.Y. May 12, 2009, No. 08 Civ. 5901 JFK) 2009 WL 1321695, at p. 22 [protective order prohibiting use of confidential information does not prevent signatories from engaging in future litigation involving overlapping discovery]; California Rules of Professional Conduct, rule 5.6 [in settlement of client controversy, lawyer may not enter agreement that imposes restriction on right to practice].)

## 2. Rule 1.11(c)

OptumRx instead relies on a narrow exception contained in rule 1.11(c) for "confidential government information." Under Rule 1.11(c), a lawyer may not represent a private client when: (1) the lawyer was a public official or employee; (2) during the public employment, the lawyer acquired information that the lawyer knows is confidential government information about a

12

person; (3) the lawyer is currently representing a private client with interests adverse to that person; and (4) the current representation is a matter in which the confidential government information could be used to the disadvantage of that person.[2]

"Confidential government information" is defined as information (1) obtained under government authority, (2) that the government is prohibited by law from disclosing to the public or has a privilege not to disclose to the public at the time the rule is applied, and (3) is not otherwise available to the public.  (Rule 1.11(c).)

Rule 1.11(c) is substantially similar to American Bar Association (ABA) Model Rules of Professional Conduct, rule 1.11(c) (ABA Model Rule 1.11(c)).  Unless there is a conflict with California's public policy, we may look to the ABA Model Rules

---

[2] Rule 1.11(c) provides in full:  "Except as law may otherwise expressly permit, a lawyer who was a public official or employee and, during that employment, acquired information that the lawyer knows is confidential government information about a person, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person.  As used in this rule, the term 'confidential government information' means information that has been obtained under governmental authority, that, at the time this rule is applied, the government is prohibited by law from disclosing to the public, or has a legal privilege not to disclose, and that is not otherwise available to the public.  A firm with which that lawyer is associated may undertake or continue representation in the matter only if the personally prohibited lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom."

for guidance on proper professional conduct in California. (*Doe v. Yim* (2020) 55 Cal.App.5th 573, 582, fn. 3.)

The following commentary to ABA Model Rule 1.11, although not incorporated in California's Rule 1.11, does not conflict with California's public policy and further explains the rationale underlying the rule, as follows in pertinent part: "This Rule represents a balancing of interests. On the one hand, where the successive clients are a government agency and another client, public or private, the risk exists that power or discretion vested in that agency might be used for the special benefit of the other client. A lawyer should not be in a position where benefit to the other client might affect performance of the lawyer's professional functions on behalf of the government. Also, unfair advantage could accrue to the other client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service. On the other hand, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards." (ABA Model Rule 1.11, com. 4.)

ABA Formal Ethics Opinion 24–509 further explains: "The objective of the Rule is to 'prevent the lawyer's improper use of his or her official position' and to protect others from the exploitation of confidential government information, acquired by the lawyer while serving as a public officer or employee." (ABA Formal Ethics Op. 24–509, p. 6, fn. omitted.) Confidential government information is limited to information "obtained under government authority," which includes "information

14

obtained pursuant to a grand jury subpoena, a search warrant, a regulatory subpoena, or other government power." (*Id.* at p. 2.) "Whether government information is publicly available – e.g., whether it can be obtained through routine discovery – will be a question of fact." (*Ibid.*)

It is clear that "confidential government information" within the meaning of rule 1.11(c) is information obtained through the exercise of government power that a regular civil litigant could not obtain simply through discovery. OptumRx asserts that if the definition of confidential government information under rule 1.11(c) excludes information that is subject to routine discovery under a protective order, nothing constitutes confidential government information. This is incorrect. Confidential government information is information that only the government can obtain, such as grand jury testimony.

In this case, the evidence showed that the documents produced by OptumRx in response to government subpoenas could be obtained through routine discovery in civil litigation, subject to a protective order. There was no evidence that Motley Rice gathered any information that was not publicly available through routine civil discovery requests, subject to a protective order, and OptumRx has not challenged the trial court's denial of the request to conduct discovery. Motley Rice's insights or mental roadmap derived from publicly available documents were not confidential government information. Preparing memoranda for government clients based on non-confidential government information cannot preclude Motley Rice from representing future clients in subsequent litigation against OptumRx. If preparing status updates for government clients based on non-

15

confidential government information was sufficient to trigger disqualification, it would apply in every case and the distinctions in the rule would be meaningless. We conclude no abuse of discretion has been shown.

## DISPOSITION

The order denying the motion for disqualification is affirmed. Respondent, the People of the State of California, is awarded costs on appeal.

NOT TO BE PUBLISHED.


                                        MOOR, J.

WE CONCUR:


        HOFFSTADT, P. J.


        KIM (D.), J.